(36 South. 102.)

No. 14,910.

## SCOPINI et al. v. BOSSIER LEVEE BOARD.*

(Feb. 15, 1904.)

PUBLIC LANDS—SWAMP LAND GRANTS.

1. This case is controlled by the principles announced in the case of Hall v. Bossier Levee Board (recently decided) ante, p. 913, 35 South. 976.

(Syllabus by the Court.)

Appeal from Second Judicial District Court, Parish of Bossier; John Thomas Watkins, Judge.

Action by John F. Scopini and others against the Bossier Levee Board. Judgment for defendant, and plaintiffs appeal. Affirmed.

William Pike Hall, for appellants. Andrew Jackson Murff and Thomas Fletcher Bell, for appellees.

NICHOLLS, C. J. The plaintiffs John F. Scopini and his sister, Mrs. Mattie Roubieu, widow, the only surviving heirs of N. F. Scopini, deceased, both residents of the parish of Nachitoches, La., alleged that they were the owners by good and valid title, and were in possession of as owners, of certain lands (which they described), containing in both tracts 100 acres, more or less.

That the board of commissioners of the Bossier Levee District had illegally, wrongfully, and without any right or legal title set up a claim to the aforesaid alluvion in sections 4 and 5, township 16, range 12, and had slandered and denied the title of petitioners, and had thereby damaged them in the sum of $400, for which they were entitled to judgment against said board of commissioners.

That said board, pretending to be the owners thereof, had advertised said lands for sale, including them in lots 10, 11, 12, 13, 14, 15, 16, 17, and 18 of section 4, township 16, range 12, and in lots 6, 7, 8, and 9 of section 5, township 16, range 12, according to a plat made by Geo. D. Alexander by order of said board, and unless restrained by the injunction would proceed to sell the same, and

*Rehearing denied March 14, 1904.

that said land was worth more than $2,000, and that an injunction was necessary to protect petitioners' rights.

In view of the premises they prayed that said board be cited, and that an injunction issue enjoining it from selling said lands; that there be judgment against said board in favor of petitioners for $400 for slander of title, and ordering it to desist from slandering said title, or to bring suit within a time to be fixed by the court, and disclose and assert judicially whatever title it had; and that said injunctions be maintained. They prayed for all necessary and general relief.

The defendant pleaded an exception that no cause of action was shown by plaintiffs' petition, and prayed that their suit be dismissed at their cost, and the writ of injunction be dissolved, reserving rights of defendant to sue for damages.

For answer defendant, reserving all rights under exception filed, denied all and singular the allegations of plaintiffs' petition. Defendant admitted to claiming the ownership to all the lands in sections 4 and 5, township 16, range 12, within the traverse and meander of line of Red Shoot Lake, as per map and survey of the United States government approved by the Surveyor General December 14, 1839, and on file in the recorder's office, Bossier Parish, La., and more particularly or specifically described by lots 10, 11, 12, 13, 14, 15, 16, 17, and 18, of section 4, and lots 6, 7, 8, and 9, of section 5, township 16, range 12, as per map made by G. D. Alexander and J. M. Davies in 1901, and on file in recorder's office, Bossier Parish, La., which was made part of the answer by special reference, which was worth more than $2,000.

Defendant claimed ownership of said lands by virtue of a grant from the state of Louisiana under Act No. 89, p. 113, of 1892, and a certificate of transfer from the state, through its proper officers, of date April —, 1901, filed and recorded on page ——, volume ——, Bossier Conveyance Records.

That the state of Louisiana derived its title to said lands through a grant from the United States under acts of Congress of 1849 (Act March 2, 1849, c. 87, 9 Stat. 352) and 1850 (Act Sept. 28, 1850, c. 84, 9 Stat. 519), generally known as the "Swamp Land Grant." That at the time of said grant, and

many years thereafter, the lands here claimed were low, wet, swamp, and overflowed lands within the meaning of said acts, and as such passed to the state of Louisiana, operating as a present grant.

That said lands had been reclaimed from their wet, swampy, and overflowed condition by dams, dikes, and levees built by the state of Louisiana and defendant in accordance with the provisions of the acts of Congress and Act No. 89, p. 113, of 1892, of the General Assembly of the state of Louisiana.

In view of the premises defendant prayed that the plaintiffs' claim be rejected, and that the writ of injunction sued out be dissolved, with $100 attorney's fees for said dissolution. Defendant further prayed for judgment recognizing it as owner of said lands, and putting it in possession of same, reserving all rights to sue for rents and other damages. Defendant prayed for all orders, and for general relief and costs.

Plaintiffs' answer to defendant's demands in reconvention was a denial of all the allegations therein contained. They averred that the strips of land in controversy in this suit lie along and constitute the banks of a meandered stream or bayou being a prong of Mack's Bayou, known as "Flat River," surveyed and meandered by authority of the United States by the Surveyor General of the United States for Louisiana, and duly approved December 14, 1839; that the strips of land were narrow strips of land lying between the meandered lines and the edge of the banks, and constituted the water front of the surveyed lots of land of plaintiffs lying within said meandered lines; that said meandered lines were not, and never were, the boundary of said lots of land under said United States survey and official plats, but under the laws of Congress and the rules and regulations of the land department were run only as the means of measuring the land to be paid for the water's edge, being the boundary of said lots under said survey, and the strips of land between said lots and the water's edge passed with the sale and transfer of said lots as a part thereof; that the state acquired said lots of land from the United States under the swamp-land grant by said survey and the maps and plats made from same with said strips of land and water fronts as a part of the same; that the state sold to plaintiffs' author, N. F. Scopini, lot No. 2 of section 4 and lots Nos. 12 and 5 of section 5, township 16, range 12, fronting on said stream, according to said survey, maps, and plats, and thereby conveyed all the land acquired by it and along said stream in front of said lots to said Scopini, from whom plaintiffs acquired; that said Scopini and these plaintiffs had been in possession of said land ever since said sale— about 40 years—and the state and the levee board, its grantee, were bound by said sale to said Scopini, and estopped from disputing or contesting the transfer so made; that the attempt of the state to dispose of these strips of land was an attempt to impair the obligation of its contract of sale to plaintiffs and their authors, in violation of section 10 of article 1 of the Constitution of the United States. Further, in the alternative, should it be decided that said defendant was entitled to said strips of land, they averred that there was an error in said survey of 1839 by which said Flat river was represented to be at a different place from where it was then and where it was now, and that the same should be so corrected as to locate it where it is, and, if the defendant was entitled to its banks, to take them where they are.

In the alternative, should it be held that said lands belonged to said state, they averred that they and their author were in possession of same as owners in good faith long prior to the act of 1892 creating the levee board, and had the right to enter the same under Act No. 21, p. 31, of 1886, giving to parties in possession the right to enter the same at 75 cents per acre, which right they ask to be permitted to exercise.

In view of the premises they prayed that defendant be rejected at its costs. But in the alternative that it should recover the strip of land claimed, they prayed that the survey and location of said stream and banks be corrected so as to place said stream where it had always been and is now, instead of running an imaginary stream through the field where none ever existed.

And further, in the alternative of its recovery, that plaintiffs be allowed to enter the same under the provisions of said Act No. 21, p. 31, of 1886. They prayed for all further orders necessary, and for general relief.

The district judge rendered judgment in favor of defendant, the board of commissioners of the Bossier Levee District, and plaintiffs appealed after unsuccessful motion for a new trial.

The decision of the issues of law and fact raised in this case are controlled and governed by the principles determined and announced by us in the matter of Mrs. Nannie Hall et al. v. Board of Commissioners Bossier Levee District (No. 14,908 of the docket of this court) ante, p. 913, 35 South. 976.

For the reasons assigned in that case, the judgment appealed from in the present one is hereby affirmed.